*1045 OPINION OF THE COURT
Lori S. Sattler, J.
Defendant former wife moves for an order directing plaintiff former husband to continue paying basic child support to defendant pursuant to the terms of the parties’ stipulation of settlement incorporated into the judgment of divorce entered on December 19, 2003 and seeks $25,942 in purported arrears in basic child support that plaintiff has not paid since November 2012. She also seeks $7,500 as and for counsel fees on the instant motion and an additional $15,000 in counsel fees to enable her to oppose plaintiffs appeal of this court’s prior order which found that plaintiff owed defendant $38,994 in cost of living increases to child support and directed that payment.
Plaintiff opposes the motion and cross-moves for a declaration that the parties’ daughter (hereinafter N.) was emancipated pursuant to the terms of the stipulation as of November 2, 2012 and for an award of counsel fees on the motion.
The issue of N.’s purported emancipation is key to both the motion and cross motion. The governing provision of the stipulation (hereinafter emancipation clause) provides as follows:
“ARTICLE IV
“(1) . . . Emancipation shall be deemed to have occurred upon the earliest happening of any of the following: . . .
“f. N.’s residing full-time away from the home of the Mother upon and after her 18th birthday, except that residence at boarding school, college or graduate school, or temporarily during summer camp or other organized summer program, shall not be deemed an Emancipation. The period, if any, from N.’s return to residence in the home of the Mother until the earliest of any other emancipation event shall be deemed a period prior to Emancipation for all purposes under this Agreement.”
In response to defendant’s demand for payment of child support arrears, plaintiff asserts that N., who turned 18 on April 19, 2012, was emancipated as of November 2, 2012. In support of this contention plaintiff proffers an affidavit of N. in which she states that on October 11, 2012, defendant told her that she was going to move to Philadelphia to live with her boyfriend, which she did in November 2012. N. reported her mother’s intention to plaintiff on October 12, 2012. Thereafter plaintiff found an apartment for N., sending her pictures while she was *1046 at school in Atlanta. She signed a lease on November 21, 2012 and moved in over Christmas break from school after she and plaintiff purchased furniture and household supplies.
N. further states that she does not want to live in Philadelphia, that she intends to return to her new apartment as her permanent residence when not in college and that she will use that address for her driver’s license and on tax returns. She does, however, intend to see her mother and father often when home from school.
Defendant contends that without consulting her plaintiff rented the apartment for N. and that his unilateral actions were designed to circumvent his child support obligations as set forth in the stipulation. She contends that this was not contemplated by the stipulation and that N. cannot be found to reside away from her on a full-time basis as she is a full-time student at Emory University in Atlanta, Georgia.
Defendant further contends that she was struggling financially at the time N. left for college and that she moved from New York because plaintiff, who had cosigned her lease, ceased payments of voluntary support that he had provided for several years after the agreed-upon maintenance was paid in full. Defendant states that those payments had enabled her to continue occupying a two-bedroom apartment with N. at a rent of $3,400 a month. She notes that plaintiff has also appealed the award to her of cost of living increases totaling close to $39,000 and has escrowed those funds pending resolution of the appeal. Defendant states that she gave up the apartment in New York for financial reasons and moved first to her boyfriend’s house in Philadelphia and then to her mother’s house. Defendant states that she has now sublet a studio apartment in New York and will move to a two-bedroom apartment upon reinstatement of child support payments.
The stipulation provides that basic child support shall be paid by plaintiff to defendant monthly and shall continue “until N. is Emancipated, at which point basic child support shall terminate.” The language at issue in the stipulation provides that “residing full-time away from the home of the mother” constitutes an emancipation event terminating basic support, and further that residence at college does not constitute an event of emancipation.
“The burden of proof as to emancipation is on the party asserting it.” (Matter of Gansky v Gansky, 103 AD3d 894, 895-896 [2d Dept 2013].) Neither party has proffered, nor can the court *1047 find, any case construing this provision, as opposed to those referencing a change of permanent residence. Indeed, plaintiff specifically relies on a line of cases relating to agreements where permanent residence is deemed to be an emancipation event and such reliance is misplaced. (Gallina v Gallina, 162 AD2d 219 [1st Dept 1990]; Bodzak v Bodzak, 48 AD3d 724 [2d Dept 2008]; Rocchio v Rocchio, 213 AD2d 535 [2d Dept 1995].) These cases evaluate the impact of an alleged change in permanent residence and are distinguishable from the standard to be met in the stipulation at bar. The question presented here is what constitutes residing full time away from defendant’s home and whether, given N.’s residence for nine months a year in a dormitory in Atlanta, plaintiff can demonstrate that she resides full time anywhere else.
Not only does the emancipation clause in the stipulation present a novel legal issue, but the court has found no case law where a financially dependent child’s change of residence is to a place other than the residence of the parent seeking termination of support payments. Increasingly however, this court has been presented with several cases where despite an agreement providing that child support payments do not terminate when a child attends college, the payor parents seek to reduce or terminate those payments. In these cases, a noncustodial parent alleges that the now 18-year-old child prefers to live with him or her, or does not wish to live with the parent who had primary physical custody. Factual support most often includes, as it does here, input from the child him or herself, a fact that this court finds problematic. Eighteen and nineteen year olds are asked to affirm that they have established a new and permanent residence and to assert a claim of independence and stability that the court views as unlikely. More often, a child’s participation may reflect the child’s concern that educational bills may not otherwise be paid or, as here, the attractiveness of proffered expense-free and relatively unsupervised independence.
Six months after N.’s 18th birthday and less than one month after her mother announced her intention to move, plaintiff located an apartment for N. and sent pictures of it to her at school. N. signed the lease, presumably guaranteed by plaintiff who is paying the monthly rental costs, and moved in during Christmas break, after her father purchased furniture and household goods. N. states that this is her residence when she is not at school and that she will rarely visit and will never live at her mother’s boyfriend’s house in Philadelphia. Left unaddressed is *1048 the circumstance now presented, where the mother no longer lives in Philadelphia and asserts that, but for plaintiffs cessation of child support payments, she would rent a two-bedroom apartment in New York.
The terms of a separation agreement, like those of a contract, must be interpreted within the four corners of the agreement if they are plain in their meaning. (Laurence v Rosen, 228 AD2d 373, 374 [1st Dept 1996].) A contract is ambiguous if the language used lacks a definite and precise meaning, and there is a “reasonable basis for a difference of opinion.” (Greenfield v Philles Records, 98 NY2d 562, 569 [2002].) Whether an agreement is ambiguous is a question of law for the courts, by looking within the four corners of the document. (Kass v Kass, 91 NY2d 554 [1998].) In deciding whether an agreement is ambiguous courts “should examine the entire contract . . . Particular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby.” (Kass v Kass at 566-567.)
The parties’ intent in requiring that only a full-time change of residence constitutes emancipation can be illuminated by reference to the use of the term “full-time” elsewhere in the stipulation. The most obvious parallel is in its use in article IV (1) (e), the provision immediately preceding the one relied on by plaintiff. Subsection (1) (e) provides that “N.’s engaging in full-time employment upon and after her 18th birthday” constitutes an emancipation event. The concept of full-time employment is qualified, however, by the further provision that “(ii) full-time employment during vacation and summer periods shall not be deemed an Emancipation.”
Examination of the stipulation as a whole makes it clear that the parties intended that basic child support payments to defendant would continue during the period of N.’s residence at school. The court rejects plaintiff’s contention that a change in the place where N. spends vacations and school breaks while attending school full time in Georgia, can effectuate an emancipation event pursuant to the terms of the stipulation. By renting an apartment for his 18-year-old daughter to use on school breaks and paying all of the expenses of a residence, plaintiff improperly used self-help to substitute voluntary payments to his daughter for payments to her mother, in contravention of the stipulation and the judgment of divorce. (Matter of Gleason v Gleason, 247 AD2d 384 [2d Dept 1998], lv denied 92 NY2d 806 [1998].) His argument that N. is thereby emancipated while *1049 she is residing on a full-time basis away at school, fails in light of the specific language of the stipulation. Accordingly, the court finds that plaintiff is obligated to continue child support payments to defendant and there is no need to embroil N. further in her parents’ financial dealings.
Accordingly, the court finds that plaintiffs unilateral suspension of child support payments was unwarranted and he is directed to resume such payments as of the date of this order and pay all arrears resulting from the suspension within 45 days of the date of this order.
Pursuant to the foregoing as well as article XIV (1) of the stipulation, defendant is entitled to payment of her expenses, costs and reasonable attorneys’ fees resulting from this motion. That relief is granted and counsel is directed to provide and serve bills to evidence the motion costs and fees incurred by defendant.
Defendant’s application for an award of counsel fees on the pending appeal is held in abeyance pending the outcome of that proceeding, as the stipulation awards fees and costs to the prevailing party, and the cross motion is denied.